Adams, J.
Hull was the plaintiff in the court below, and in his petition sets out that, by the consideration of the common pleas court, at its September term, 1896, he recovered a judgment against the. Standard Coal and Iron Company for the sum of 1381,481.00. He further sets out that the defendant, Larwill, holds a thousand shares of the capital stock of the Standard Coal and Iron Company, and that one Matthew Addy holds a thousand shares of the stock; and he makes the necessary allegations to charge Larwill and Addy with the stockholders’ liability.
He alleges the insolvency of the coal company, and that it had no assets, and the usual allegations in a petition to assess stockholders.
Larwill and Caroline E. Addy, as executor of Mathew Addy, both answer, and the fourth defense of Caroline E. Addy and the fifth defense of Larwill make the same question, on which the cause was determined in the . court below, and on which error-is now prosecuted. The court of common pleas overruled demurrers -to the fourth defense of Mrs. Addy and to tbe fifth defense of Larwill, and the plaintiff not desiring to plead further, judgment was rendered accordingly, and error is now prosecuted.
The defenses are the same in substance. • The defense is probably set out at great length in the Addy answer, but each of these defendants set up that Hull’s judgment was *534 obtained on bonds of the coal company which contained the following stipulation:
“No holder of this bond shall have recourse for its payment upon any stockholder of said company, under or in pursuance of any law imposing liabiliy upon stockholders of incorporated companies, whether such law be now in force or shall hereafter be enacted.”
The question is: Does this stipulation in the bond operate as a defense to an action to enforce the stockholders’ liability ?
It has been said, and we have no doubt correctly, that with the exception of an opinion by Avery, Referee, published in the 18 Bulletin, 264, this question has never been decided in Ohio; at least, counsel agree on that, and we have not been able to find any other decision.
Oounsel for plaintiff in error cite the court to section 3, article 18, of the constitution of Ohio, and also to section 3258 of the Revised Statutes.
Without reading them, this constitutional provision and the statute provide for the stockholders’ liability; that is, the secondary liability of stockholders, in case the assets of the corporation are not sufficient to pay the debts of the corporation, equal to the amount of their stock. Counsel for plaintiff in error claim that this stipulation, contained in the bonds on which Hull obtained his judgment, is void because it is contrary to law and against public policy; and, while he has cited us to no decisions that have held that this exact stipulation is contrary to law, or contrary to public policy, he has cited us to a number of Ohio decisions where contracts have been held void because contrary to public policy.
The first of these is 44 Ohio St., 471, Railway Company v. Spangler, and, without reading from it, that was a case where the supreme court held that a contract by a railroad company, whereby it attempted to exempt itself from liability on account of the negligence of its employes, was void. And we may say here that that holding of the supreme court is along the line that it was the well-settled rule of decisions in Ohio that corporations were liable for the negligence of their employes, and such contracts were against public policy, looking to the safety, not only of property, but *535 of the lives of employes of the companies and the lives of passengers; that the railway companies should be held to liability for negligence, and that they should not be allowed to exempt themselves from that liability by contract, by reason of public policy which I have stated.
In Insurance Co. v. Leslie, 409, 416, the court speaks about the statute which provides that insurance companies, in the absence of intentional fraud, shall be liable for the whole amount named in the policy where there is a total loss, and that, where there is a partial loss, they shall be liable for the amount of the partial loss in proportion to the amount of the insurance mentioned in the policy. An attempt was made in that case to evade that statute by a contract in direct violation of its provisions; and the court say that that statute was passed to remedy a well-known evil. That is, men paid their premiums on the basis of a certain amount of insurance on their property. Then, if the property was destroyed, instead of receiving the amount of the policy for which they had paid, the companies attempted to simply pay them what might be determined to be the value of the property.
On the other hand, we have been cited to a great many cases. We have been cited to 24 Cal., 518; 22 Cal., 379; 117 Cal., 157; 95 Ky., 492; 70 Fed., 346; 36 Md., 154; 36 Ia., 467; 22 Southern, 970; 19 Ia., 263; 134 Mass., 590; to 3 Thompson on Corporations, 3008, and to the opinion of Avery, Referee, in 18 Bulletin, 264. These authorities unanimously establish the rule, as we fiüd it laid down in Cook on Stock and Stockholders, section 216:
“A corporate creditor may, by express contract, when the debt is incurred, waive his right to collect from the stockholder debts which the corporation fails to pay. And the corporation in its contracts with third persons may, it is held in England, lawfully stipulate for the exemption of its members from the liability imposed upon them by statute in the event of the insolvency of the corporation.
“It has been held to be competent for any one dealing with the company to contract to hold the shareholders responsible to only a limited extent, to no extent at all, or to any specified extent mutually agreed upon.”
24 Wendell, 337; 6 Hill, 47, and 3 Comstock, 518, are *536 authorities along the line that constitutional privileges may be waived.
J. B. Jones, for Plaintiff.
Kibler & Kibler, for Defendant, Larwill.
Charles W, Baker, for Addy, Executrix.
With this unanimous line of authorities, holding that such a stipulation is a valid one, with no decision in Ohio, or elsewhere, cited to us to the contrary, and from the reason of the thing, we conclude that the right of a creditor of a corporation to enforce the stockholders’ liability is a personal right, which he may waive or release after the liability has attached, or a party may waive it when he contracts with the corporation, and neither is forbidden by the constitution or by the statute.
I may call attention to the fact here that, in at least one of these answers, it appears that these were mortgage bonds, and, as the court is advised, this provision in these bonds, or a similar provision, is generally put in bonds that are secured by mortgages on railway property, and properties of like character; and, so far as we are advised, no court has evar held that that provision was contrary to public policy, or that it was contrary to the law which originally .gave everybody the right to rely on the stockholders’ liability.
In other words, here is a man making a contract with a corporation, by which he is to get a mortgage security on the property of the corporation, with the agreement that, if he is given the security of the mortgage, he will waive or release the contingent liability of the stockholder; and we see nothing, either in good morals, or public policy, against that kind of a contract.
The judgment of the court below is affirmed.